### CASE OF ASAHEL STEARNS, MEMBER FROM CHARLESTOWN.

The office of University Professor of Law, in Harvard University, is incompatible with that of representative.

At the commencement of the January session, a letter was received from Asahel Stearns, member from the town of Charlestown, announcing, that, since the last session, he had accepted the office of "University Professor of Law," in Harvard College, and submitting for the determination of the house, whether that office is incompatible with his holding his seat as a member.

Messrs. *Bartlett*, of Charlestown, *Thacher*, of Boston, and *Lincoln, Jr.*, of Worcester, were appointed a committee to consider the subject.[2]

The committee subsequently made the following report[3]:—

" The committee, to whom was referred a letter to the Hon. Timothy Bigelow, speaker of the house of representatives, from Asahel Stearns, Esq., one of the representatives of the town of Charlestown, informing him, that, since the last session of the legislature, he had accepted the office of ' University Professor of Law,' in Harvard College, and submitting

[1] 38 J. H. 141.  [2] Same, 171.  [3] Same, 252.

28

the question, whether the office was incompatible with a seat in the house of representatives, having attended to the subject, ask leave respectfully to report, that, by the statutes regulating the law school in Harvard College, which was founded in the year one thousand eight hundred and seventeen, the professor is elected by the corporation of the college, and is required to reside in the town of Cambridge, and to open and keep a school there, for the instruction of the graduates of that university, and of others prosecuting the study of the law. He is also required, in addition to prescribing to his pupils a course of study, to examine and confer with them upon the subjects of their studies, to read to them a course of lectures, and generally to act the part of a tutor to them, so as to improve their minds, and assist their acquisitions.

The students of the law school have access to the college library, and the privilege of attending the lectures of the university. They are permitted to board in commons, and are required to give bond to the college, for the payment of college dues, and the fee for tuition allowed to the professor. They are on the same footing generally, in respect to privileges, duties, and observance of all college regulations, as by the laws pertain to resident graduates. A degree of bachelor of laws has been instituted by the college, to distinguish those pupils, who, having remained at least eighteen months at the school, shall pass the residue of their noviciate in the office of some counsellor of the supreme judicial court, and thereby become entitled to practise law in the courts of the commonwealth.

By the constitution of this commonwealth, ch. vi. sec. ii., it is declared, that 'no person holding the office of president, professor, or instructor of Harvard College, shall have a seat in the senate, or house of representatives; but their being chosen or appointed to and accepting the same, shall operate as a resignation of their seat in the senate or house of representatives, and the place so vacated shall be filled up.' The university is not, in its corporate capacity, entitled to elect a representative to either branch of the legislature. The rights and privileges,

however, of that ancient seminary, have ever been fostered by the government, and are dear to all lovers of religion, science, and literature. At the adoption of the constitution, all the professors and instructors of Harvard College were required to reside in Cambridge, were employed in the immediate government and instruction of the students, and could not, consistently with the performance of their official duties, attend to the business of legislation. But the framers of that instrument did not see fit to provide an exception in favor of professors, who might afterwards be elected, who might not be required to reside constantly at the college, and whose duties might not be incompatible with a seat in the legislature. The terms of the constitution on this subject are peremptory, containing no qualification nor limitation; and they operate, in the opinion of your committee, to exclude from holding a seat in either branch of the legislature, the professors and instructors of Harvard College, known and existing at the adoption of the constitution, and all others who might be elected to professorships, which might be established in subsequent periods of the commonwealth.

In conference with Mr. Stearns, he informed the committee, 'that the professor of law receives no salary or other emolument from the funds of the college; that he has no vote with the president, the other professors and instructors, in the government of the college, or management of its concerns; that he has no concern with or control over any of the undergraduates, or graduates, not members of the law school; that he is not required to devote his attention exclusively to the school, but, on the contrary, that he is obliged to keep an office, and to continue to be a practising counsellor of the supreme judicial court; that he is not, by law, exempt from taxation, as the president, the professors, and instructors of the college, as established at the formation of the constitution, are, and always have been.' Mr. Stearns also expressed his doubts to the committee, 'whether, in strict propriety, the law school could be considered as a part of the college, within the meaning of the constitution; and suggested, whether it ought not

rather to be regarded as an institution connected with the college, and, with that and the medical school, constituting the university.'

Although the professor does not receive a stated salary from the college, yet the compensation, to which he is entitled for his services, is collected under the authority of the college, and by force of the bond which is required from each student on his admission to the school. It is true, that the professor must keep an office, and continue to be a practising counsellor of the supreme judicial court. But these are part of his qualifications for the professorship, and if these should cease, the corporation of the college would have a right to declare the chair vacant, and to elect another to the place. The president and certain of the professors and tutors of the college are, by law, specially exempted from the payment of taxes; but this is at the will of the legislature, and is not a constitutional right. The committee do not conceive that they are warranted, either by the constitution or the laws of the commonwealth, to make a distinction between the college and the university. The name by which this institution is recognized in the constitution and ancient laws of this commonwealth, is 'Harvard College;' but in the chapter of the constitution which declares and ratifies the rights and immunities of that college, it is called the 'University at Cambridge.' Known by both names, prior to the establishment both of the medical and law schools, the doubts suggested by Mr. Stearns on this point are not, in the opinion of the committee, well founded.

The law school in Harvard University, being thus established by and under the patronage of that institution; its professor being elected by and deriving his authority and duties from the same source; and the students being recognized as members thereof; the committee are of opinion, and do report, that, by the acceptance of the office of university professor of law, the seat of Asahel Stearns, Esq., in the house of representatives, became vacated; and that notice thereof be sent to the town of Charlestown, to fill up the vacancy, if the inhabitants thereof see fit so to do."

The report was discussed and recommitted,[1] but finally agreed to,[2] by a vote of 71 to 12.

[1] 38 J. H. 293.          [2] Same, 419.